**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | : | |
| Y.E., | : | C.M. # 19705-S |
| A person with a disability | : | |

## ORDER APPROVING COMPENSATION & CONTRIBUTION

WHEREAS, Y.E. is a person with a disability supported by D.E. (the "Guardian"), who was appointed as guardian of Y.E.'s person and property on August 6, 2021;[1]

WHEREAS, on November 20, 2023, at a routine hearing scheduled to discuss the Guardian's second accounting (the "Second Accounting"), the Guardian was directed to (1) close Y.E.'s Bank of America account, (2) submit additional receipts in support of the Second Accounting, and (3) provide a list of shared household expenses such that the Court could determine Y.E.'s proportionate share; the Guardian was also advised that he could not pay himself for caregiver services but could request payment at a specific hourly, weekly, or monthly rate;

WHEREAS, on or about December 18, 2023, the Guardian submitted (1) proof that the Bank of America account was closed, and the proceeds deposited into the guardianship account, (2) additional receipts in support of expenditures reflected

---

[1] Docket Item ("D.I.") 6.

1

in the Second Accounting, (3) receipts showing household expenses, and (4) a request for compensation of $300.00 per week;

WHEREAS, "a guardian must act with competency, rationality, and integrity and in a manner that meets the best interests of the [person with a disability;]"[2] a "guardian of the property shall, in the name of the person with a disability, do whatever is necessary for the care, preservation and increase of the property of the person with a disability[;]"[3]

WHEREAS, "[t]he guardian of the property may, without court authorization or confirmation, pay or apply income or principal from the estate as needed for the clothing, support, care, protection, welfare and rehabilitation of the person with a disability, as requested by the person with a disability or the guardian of the person, if any. In exercising this power, the guardian of the property shall consider the cost of support and care of the person with a disability for the expected life of the person with a disability and the needs of any persons dependent upon the person with a disability as may be reasonably anticipated[;]"[4] "[t]he guardian of the property shall not be required to expend the guardian's own money for the support or care of the property or person[;]"[5]

---

[2] *In re Harris*, 2003 WL 22843905, at *1 (Del. Ch. Nov. 14, 2003).
[3] 12 *Del. C.* § 3921(c).
[4] 12 *Del. C.* § 3923(e).
[5] 12 *Del. C.* § 3923(f).

WHEREAS, by the final appointment order, the Guardian was required to file accountings; under Court of Chancery Rule 116, guardians must submit "such vouchers as may be required" with their accountings; the Court's Handbook for Guardians of Adults clarifies as follows:

> A guardian must keep complete records of the income (*e.g.*, interest, pension, dividends) and assets (*e.g.*, accounts, stocks, tort settlement) received and spent (how, when and how much) for the Protected Person. A copy of a cancelled check, along with an invoice for payment or receipt, is adequate to prove expenses. It should be clear from the receipt or by notation what the expenditure was for, e.g., medication, clothes, etc.[6]

WHEREAS, similarly, "[i]f the Court so authorizes, the accounting may include reimbursement from the Protected Person's funds to the guardian for expenses incurred by the guardian on behalf of the Protected Person, including Court costs, filing fees, attorney's fees (such as attorney *ad litem's* fees), reasonable expenses incurred for the benefit of the Protected Person such as clothing, toiletries, etc. Any such requests for reimbursement must include itemized receipts documenting the expenditure[;]"[7]

IT IS HEREBY ORDERED this 10th day of January 2024, as follows:

1. From the date of this Order and unless otherwise ordered, the Guardian

---

[6] Court of Chancery of the State of Delaware, Handbook for Guardians of Adults, p.42, available at https://courts.delaware.gov/chancery/guardianship/index.aspx.
[7] *Id.* at p.44.

3

may make two recurring withdraws from the guardianship account, for which no further support or documentation is required:

    a.    The Guardian may withdraw $300.00 per week, payable to himself, for caregiving services, provided the Guardian continues to provide such services. If the Guardian ceases to act as caregiver, he shall cease withdrawing payments and notify the Court within one week of his cessation by letter filed on the docket.

    b.    The Guardian may withdraw $350 per month reflecting Y.E.'s portion of the following household expenses: Delmarva Power, HOA fees, water and sewer, and cable/internet services. The Guardian may charge Y.E. with additional household expenses (*e.g.*, waste removal, propane, insurance) in her proportionate share (1/2), but must submit documentation in support with each accounting.

2.    The Guardian shall not use guardianship funds to cover household expenses related to Y.E.'s Maryland property absent prior approval, which the Guardian can request through a petition to expend.

3.    The Second Accounting will be approved as an accurate reflection of the income and expenditures during the accounting period.

4.    The Guardian is reminded that he must provide receipts or invoices for every expenditure from the guardianship account.  Future unsupported expenditures may be converted into a judgment against the Guardian and the Court will consider other appropriate sanction(s) to protect Y.E. and preserve her property.

                                        __*/s/ Selena E. Molina*_____
                                        Magistrate Selena E. Molina